FILED

2024 Mar-12  PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERIC CALHOUN**, *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1417-AMM** |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case is before the court on a motion for summary judgment by defendants PHH Mortgage Corporation ("PHH"), successor by merger to Ocwen Loan Servicing, LLC, ("Ocwen"), and Wells Fargo Bank, N.A., as Indenture Trustee under the Indenture relating to IMPAC CMB Trust Series 2004-6 ("Wells Fargo") (collectively, "the defendants"). Doc. 52. For the reasons explained below, the motion is **GRANTED**.

## I.   BACKGROUND

Facts set forth in the parties' statement of undisputed facts are deemed admitted for summary judgment purposes unless controverted by the response or reply of the opposing party. These are the undisputed material facts construed in the light most favorable to plaintiffs Eric and Arletha Calhoun (collectively, "the

Calhouns"), and those disputed by the defendants but construed against them for purposes of their summary judgment motion:

This case revolves around an abandoned property ("the property") located at 2311 Fairfax Avenue in Bessemer, Alabama. Doc. 53 at 3. The defendants took possession of the property in July 2020 and "contracted with Altisource[] for property management services, including inspections, safety reports, and repair work." *Id.* ¶ 1; *see generally* Doc. 52-1. Altisource regularly provided the defendants reports concerning the condition of the property that "were specifically aimed at identifying 'safety issues' and code violations." Doc. 53 ¶ 2.

Altisource had performed at least two property inspections before the defendants acquired the property. Doc. 54-2 at 2; Doc. 54-3 at 2. According to both inspection reports, the property was not up to code. *See* Doc. 54-2 at 4; Doc. 54-3 at 4. Altisource classified the property as an "[o]lder home [that] requires work to bring to code." Doc. 54-2 at 4.

Altisource performed another inspection on August 1, 2020. Doc. 52-1 at 9. Under the heading "Exterior Inspection-1[,]" the report contains a question that asks, "Is there any missing or damaged siding, brick, stone or stucco?" *Id.* at 12. Altisource answered "[y]es." *Id.*

| Exterior Inspection-1 | |
|---|---|
| Exterior Plumbing - If utilities off, mark Unknown where applicable | |
| Does the property have a well? | No |
| Does the property have public water service available? | Yes |
| Does the property have a septic tank? | No |
| Does the property have public sewer service available? | Yes |
| Are there any visible leaks in the exterior waterline? | No |
| Is there any missing or damaged siding, brick, stone or stucco? | Yes |
| If yes, do the damages exceed 20 sq. ft. of total exterior surface area? | No |
| Are all painted surfaces free of deteriorated paint? | Yes |
| Are there any damaged or hanging shutters? | No |
| Is there any damaged or missing fascia or soffit? | Yes |

*Id.*

Under the heading "Life Safety Interior Inspection," the August 1 report contains a question that asks if "the stairs, rails, porches or decks create a life safety issue[.]" *Id.* at 13. Altisource answered "[n]o." *Id.* Other questions in this section concern "exterior structures"; "dead trees"; "exterior fences [and] gates"; "chimney[s]"; "exterior finishes"; "roof[s] or gutter[s]"; "[e]xterior life safety issue[s]"; "[e]xterior [h]azardous or [l]ife [s]afety [i]ssues." *Id.*

3

| Life Safety Interior Inspection | |
|---|---|
| Are there Interior life safety issue ? | No |
| Are there any Interior Hazardous or Life Safety Issues (Holes in the walls or ceiling)? | Yes |
| Are there holes in the floor causing a life safety issue? | No |
| Do any exterior structures, sheds or buildings create a life safety issue? | No |
| Are there any dead trees near house that threaten property or create a life safety issue? | No |
| Does the foundation create a life safety issue or is it unsound? | N/A |
| Do the stairs, rails, porches or decks create a life safety issue? | No |
| Do any exterior fences, gates or walls create a life safety issue? | No |
| Does the chimney create a life safety issue? | No |
| Is the property Mobile/Manufacture Home? | No |
| Do any exterior finishes create a life safety issue? | No |
| Does the roof or gutter create a life safety issue? Is the Roof damaged Or Missing Shingles ? | N/A |
| Is there Exterior life safety issue ? | No |
| Other Exterior Hazardous or Life Safety Issues (Failing landscape,  Retaining walls  or any other Life safety issue) | No |

*Id*.

The property is one story, and the only stairs are exterior stairs. *See id.* at 8, 14, 20–34; *see also* Doc. 52-2 at 56, Dep. 55:5–21.

Altisource performed another inspection on August 31, 2020. Doc. 53 ¶ 8 (citing Doc. 52-1 at 15). The August 31 report asks if there are "any exterior hazards." Doc. 52-1 at 17. The answer to that question was "[i]nsects." *Id.* The heading at the beginning of the report reads "AFS Interior." *Id.* at 15. The August 31 report specifically mentions damage to siding six separate times. Doc. 52-1 at 16–19.

| Exterior - General | |
|---|---|
| Are you able to complete the Exterior General form? | Yes |
| Are any of these items found at the property? | None |
| What is the status of the HVAC? | damaged |
| Which utility meters are present? | Electric |
| Which utility meters are running or the utility is on? | None |
| Are any utilities shared? | None |
| Is there an above-ground fuel source on the property? | None |
| What is the status of the main water valve at the curb? | No Water Service |
| Is the property connected to sewer or septic? | Cannot Determine |
| Are there any exterior hazards? | Insects |
| Are there any potential hazards at the property that could damage the adjoining property? | Yes |
| Are there exterior damages caused by any of the following? | None |
| Are any of these items damaged? | Other |
| Which items require securing or covering? | None |
| Comments and description of damages / repairs needed | case # EC2309836<br>no access interior due to key<br>does not open door<br>na<br>trash cans swing<br>wasps hvac damaged<br>Dilapidated shed damaged<br>exterior walls boarded door<br>needs removed.<br>na<br>Siding damage hvac damaged<br>damaged electrical mast<br>na<br>Needs shrub trimming<br>na |

*Id.* at 17. The August 31 report provides pictures of the damages and repairs noted in the comments box, including damaged siding.



*Id.* at 23. The report does not contain any pictures of the subject stairs apart from the photos displaying the front of the home from a street view.



*Id.* at 21.

On September 1, 2020, Mr. Calhoun "visited the property to inspect it for prospective purchase." Doc. 53 ¶ 11. Mr. Calhoun, a real estate agent, "learned about the property through the National Community Stabilization Trust, which facilitates the sale of vacant, abandoned, and distressed properties." *Id.* ¶¶ 11–12; Doc. 52-2 at 25, Dep. 24:3–6; *id.* at 40, Dep. 39:8–12; *id.* at 42, Dep. 41:1–4. Mr. Calhoun "visited the property on behalf of Prime Investment Brokers[] and was accompanied by Ron Underwood, the owner of Prime Investment Brokers." Doc. 53 ¶ 13 (citing Doc. 52-

6

2 at 39, Dep. 38:13–14; *id.* at 43, Dep. 42:7–10).

Mr. Calhoun testified that when he arrived, he first "[w]alked around the property, [and he] looked into the windows and doors." Doc. 52-2 at 53–54, Dep. 52:24–53:4. He then used the front porch steps to enter the property using the front door. *See id.* at 54, Dep. 53:3–12. He then "inspected the property, [and] left the property." *Id.*, Dep. 53:5–6. Mr. Calhoun "went down the steps . . . to leave." *Id.*, Dep. 53:7–8. But he "decided to go back and take a picture of the plate card on the door." *Id.*, Dep. 53:8–10. Mr. Calhoun used the stairs again to take the picture. *Id.* at 56, Dep. 55:9–22. He testified that he then "turned around and was walking down [the stairs] when the accident occurred." *Id.*, Dep. 55:20–21.

Mr. Calhoun testified that "the last set of stairs gave away when [he] stepped on it and [he] fell." *Id.* at 54, Dep. 53:11–12. He testified that he landed on a "stake that was in the ground." *Id.* at 64, Dep. 63:16–19. He testified that he "was looking at [the steps] on [his] way down." *Id.* at 60, Dep. 59:16–20. Mr. Calhoun testified that he did not "trip or stumble at all going up the stairs." *Id.* at 58, Dep. 57:13–16. Mr. Calhoun testified that he did not "have any knowledge or understanding of why [the stairs] collapsed[.]" *Id.* at 61, Dep. 60:12–15.

Mr. Calhoun testified that he suffered "[t]remendous pain" as a result of the fall. *Id.* at 85, Dep. 84:5–11. The Calhouns filed suit against the defendants, asserting claims of negligence, wantonness, and loss of consortium. Doc. 11 at 3–5. The

defendants moved to dismiss the complaint, Doc. 15, and that motion was denied, Doc. 22. The defendants then filed an answer. Doc. 23.

The defendants later filed a motion for summary judgment with an evidentiary submission, Doc. 52, and a supporting brief, Doc. 53. In response, the Calhouns filed an evidentiary submission, Doc. 54, and an opposing brief, Doc. 55. The defendants filed a reply. Doc. 56. The court heard oral arguments from the parties and gave both parties the opportunity to file supplemental briefs, which they did. Docs. 61–62.

## II.   LEGAL STANDARD

A party moving for summary judgment must establish "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could "affect the outcome" of the case. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1303 (11th Cir. 2016) (cleaned up). A material fact is in "genuine" dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (cleaned up). In deciding a motion for summary judgment, the court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

### III.   ANALYSIS

### A.   Mr. Calhoun's Negligence Claim

To establish negligence under Alabama law, "the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (cleaned up). "A person"—such as Mr. Calhoun—"who enters land with the landowner's consent to bestow some material or commercial benefit is an 'invitee . . . .'" *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010).

"[A] landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Id.* "The owner of a premises is not an insurer of the safety of his invitees, and the principle of res ipsa loquitur is not applicable." *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d 313, 314 (Ala. 2000) (cleaned up). Under Alabama law, notice to the defendant is required to prevail on a premises liability claim. *See Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1192 (Ala. 2002). Further, "[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Harold L. Martin*, 769 So. 2d at 314.

The defendants offer three arguments in support of their contention that the court should grant summary judgment in their favor with respect to Mr. Calhoun's

negligence claim: (1) Mr. Calhoun lacks the requisite evidence to prove that the steps were defective; (2) Mr. Calhoun cannot rely on *res ipsa loquitur* to infer that the steps were defective at the time of the accident; and (3) Mr. Calhoun fails to present any evidence that the defendants had actual or constructive notice of an allegedly defective condition. Doc. 53 at 2. Because the defendants' third argument is dispositive, the court discusses only that argument here.

"Notice to the defendant is critical because '[t]he entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries.'" *Goggans v. Target Corp.*, No. 21-10971, 2021 WL 5298900, at *2 (11th Cir. Nov. 15, 2021) (quoting *Quillen v. Quillen*, 388 So. 2d 985, 989 (Ala. 1980)). The defendants contend that the Calhouns must prove that they "knew, or, in the exercise of reasonable care, should have known" about the alleged dangerous condition "in time to prevent [Mr. Calhoun's] injuries." *Ex parte Wal-Mart Stores, Inc.*, 806 So. 2d 1247, 1249 (Ala. 2001).

The Calhouns respond that the defendants "had actual/constructive prior notice of the defective condition on the premises by virtue of three inspection reports from Altisource." Doc. 55 at 19 (cleaned up). According to the Calhouns, "the defect was blatantly obvious since Altisource provided reports that the property was not up to code and the property had issues with the stairs." *Id.* at 19–20. And the Calhouns argue that the defendants breached their duty because they failed to "repair the

10

defective condition on the premises or warn [Mr.] Calhoun of the defective condition." *Id.* at 20 (cleaned up).

On reply, the defendants assert that the "reports do not contain any evidence of defects in the stairs." and confirm that there is no "life safety issue" with the property's "stairs, rails, porches or decks." Doc. 56 at 1–2. The defendants contend that the Calhouns' entire argument rests on the question in the report asking whether there is any "missing or damaged siding, brick, stone or stucco." *Id.* at 4. The defendants insist that the reports "include[] multiple statements that there were no safety issues with the stairs and no exterior hazards." *Id.* at 5. And, the August 31 "report clarifies the 'yes' answer to the question about 'missing or damaged siding, brick, stone or stucco'" by explaining that "there is siding damage and provid[ing] pictures." *Id.* (cleaned up). The report does not contain any "pictures of damaged brick or stairs." *Id.*

There is not a genuine issue of material fact whether the defendants had notice of the condition of the stairs. *First*, to the extent that the Calhouns argue that the defect was "blatantly obvious," Doc. 55 at 19, that defeats their negligence claim. Under Alabama law, "[t]he owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Ex parte Mountain Top Indoor Flea Mkt., Inc.*, 699 So. 2d 158, 161 (Ala. 1997) (cleaned up).

11

*Second*, to the extent the Calhouns rely on the Altisource reports, those reports did not give the defendants notice of the condition of the stairs. The Calhouns' argument largely rests on the affirmatively answered question in the August 1 report about whether the property has "any missing or damaged siding, brick, stone or stucco[.]" Doc. 52-1 at 12. Because the stairs are brick, the Calhouns assert that the answer to this question must have put the defendants on notice of the alleged danger. *See* Doc. 55 at 4.

But no evidence supports that inference. The August 1 report specifically asks whether "the stairs, rails, porches or decks create a life safety issue[,]" and Altisource answered that question in the negative. Doc. 52-1 at 13. Similarly, Altisource expressly reported that the property did not have an "[e]xterior life safety issue[.]" *Id.*

The responses under the "Exterior - General" section of the August 31 report confirm that the reports did not note any problems with the stairs. *See id.* at 17. That report asks if there are "any exterior hazards[,]" and the only hazard listed was "[i]nsects." *Id.* Further, that section of the report contains a place to input "[c]omments and description of damages / repairs needed." *Id.* The report lists several issues with the property in that space, but it does not mention any issue involving the stairs or the stake in the yard. *Id.* The response does list "[s]iding damage" as an issue. (The August 31 report lists "[s]iding damage" as an issue on

six occasions.) *Id.* at 15–19. That description of siding damage follows the August 1 report's answer that the property had "missing or damaged siding, brick, stone or stucco." *Id.* at 12. Put simply, the Altisource reports are not evidence that the defendants had notice of the allegedly defective condition of the stairs.

The Calhouns oppose summary judgment on the ground that when a "plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, the question of whether the defendant had actual or constructive notice of the defect will go to the jury." Doc. 55 at 10–11 (citing *Mims v. Jack's Rest.*, 565 So. 2d 609, 610 (Ala. 1990)). But the Eleventh Circuit considered and rejected this argument in *Goggans*. 2021 WL 5298900. There, the court "assume[d] without deciding that [the plaintiff] created a jury question as to whether she was injured because of a defective condition." *Id.* at *2. But the court held that "[s]ummary judgment was still appropriate, however, because it's undisputed that Target lacked actual notice and no reasonable jury could conclude that it 'should have had notice of the defect before the time of the accident.'" *Id.* (quoting *Hale v. Sequoyah Caverns & Campgrounds, Inc.*, 612 So. 2d 1162, 1164 (Ala. 1992)).

Like the plaintiffs in *Goggans*, the Calhouns rely on "the assumption that Alabama state law determines whether [they] presented sufficient evidence to get to a jury in federal court." *Id.* at *3. But, as *Goggans* explained, "the sufficiency of

evidence to require jury submission in diversity cases is a question of federal law." *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969)[1]; *see also Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982) ("[U]nder *Erie* [*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)] federal law controls questions of the sufficiency of the evidence in state law claims.").

Here, because "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Summary judgment is **GRANTED** in favor of the defendants on the Calhouns' negligence claim.

## B.   Mr. Calhoun's Wantonness Claim

The defendants also contend that they are entitled to summary judgment on the Calhouns' wantonness claim. "Wantonness is not merely a higher degree of culpability than negligence." *Tutor v. Sines*, No. 1210037, 2023 WL 2054060, at *2 (Ala. Feb. 17, 2023) (cleaned up). "Wantonness is '[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.'" *Id.* (quoting Ala. Code § 6-11-20(b)(3)). "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and

---

1 All decisions of the Fifth Circuit before October 1, 1981 are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Hilyer*, 227 So. 3d at 22 (cleaned up).

According to the defendants, the Calhouns "cannot show . . . Defendants recklessly or consciously disregarded the safety of those on its premises. Doc. 53 at 23. "[T]here is no evidence Defendants w[ere] aware of prior, similar falls on the steps at issue." *Id.* Mr. Calhoun "testified he is not aware of anyone else falling on the steps." *Id.* (citing Doc. 52-2 at 66, Dep. 65:14–17). And Mr. Calhoun testified that he "has no facts or evidence to show the owner, employees or contractors knew of a loose step." *Id.* (citing Doc. 52-2 at 76, Dep. 75:15–21) (cleaned up). Because the defendants lacked knowledge of the allegedly dangerous condition, they argue that their "conduct simply cannot be classified as wanton or willful." *Id.* at 24.

The Calhouns respond that "[i]n Alabama, '[w]antonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.'" Doc. 55 at 21 (quoting *Cash v. Caldwell*, 603 So. 2d 1001, 1003 (Ala. 1992)). The Calhouns compare their case to *Southeast Environmental Infrastructure, L.L.C. v. Rivers*, in which the Alabama Supreme Court held that there was sufficient evidence for a jury to find wantonness when the defendant's "employees had knowledge of proper safety procedures for rigging and excavation but knowingly disregarded those safety rules and regulations while

knowing that injury would likely result." 12 So. 3d 32, 47–48 (Ala. 2008); *see* Doc. 55 at 21–22. The Calhouns argue that, like the defendants in *Rivers*, "[d]efendants consciously disregarded a known danger . . . the loose bricks." Doc. 55 at 22.

The record contains no evidence that demonstrates a reckless or conscious disregard to the rights or safety of others. The court has already concluded that the Altisource reports could not have put the defendants on notice of the alleged issue with the stairs. *See supra* Section III.A. That alone distinguishes this case from *Rivers*, in which the court explicitly found that a jury could "conclude that [the defendant's] employees had knowledge of proper safety procedures . . . but knowingly disregarded those safety rules and regulations." 12 So. 3d at 47–48. In any event, for the same reasons there is a lack of evidence of negligence, and because Mr. Calhoun conceded he has no evidence of the defendant's knowledge, there is a dispositive lack of evidence of wantonness.

Therefore, the defendants' motion for summary judgment on the Calhouns' wantonness claim is **GRANTED**.

## C.    Mrs. Calhoun's Loss of Consortium Claim

Finally, the defendants argue that they are entitled to summary judgment on the Calhouns' loss of consortium claim. *See* Doc. 53 at 24. "A loss-of-consortium claim is derivative of  the claims of  the  injured  spouse." *Lyons  v. Vaughan Reg'l Med. Ctr., LLC*, 23 So. 3d 23, 29 (Ala. 2009) (cleaned up). To

16

recover for loss of consortium, a spouse must "prove damage to his or her marital interest resulting from the underlying wrongful act." *Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996). Because Mr. Calhoun's claims of negligence and wantonness do not survive summary judgment, neither does Mrs. Calhoun's claim of loss of consortium. *See Lyons*, 23 So. 3d at 29. Summary judgment is **GRANTED** against that claim.

## IV.    CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment. The Clerk of Court is **DIRECTED** to close the case.

**DONE** and **ORDERED** this 12th day of March, 2024.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE